THE PEOPLE, APPELLANT, *v.* ROBERT LOGAN, RE-
SPONDENT.

An appeal in criminal cases may be taken from an order of the District Court allow-
ing a demurrer, though final judgment be not entered.

An indictment should charge a statutory offense in the words of the statute creating
it, or in words of similar import.

The crime must be directly and positively charged and not argumentatively.

The want of a direct allegation of anything material to the description of the sub-
stance, nature or manner of the offense cannot be supplied by any intendment
or implication whatever.

APPEAL from the District Court of the Second Judicial Dis-
trict of the Territory of Nevada, Ormsby County, Hon. GEO.
TURNER presiding.

*Thomas E. Haydon* and *Charles E. Flandreau*, for Appel-
lant, made the following points:

We contend that the retaining of a license properly issued in the first place, with the felonious intent of putting it in cir-
culation, is precisely the same in effect as if the party so felo-

niously retaining it had abstracted it from the office of the Auditor in the first place with such intent. It is precisely the same in principle as the crime of larceny by a servant of his master's goods. (2 Russell on Crimes, ch. 16, p. 162, *et seq.*)

The objection that the bill charges more than one offense is utterly without foundation. It is merely divided into paragraphs, which, taken together, charge one offense. 1st. The receipt and felonious retention of the warrant with intent to circulate, which is necessarily involved in the crime of issuing. 2d. The felonious alteration, and 3d, the issuing. Defendant is charged with a felony, not several felonies, and even if the bill had charged three several offenses, each in itself complete in a different manner, still it would have been good under the statute which expressly authorizes such a statement of the offense. (Laws of 1861, p. 460, sec. 238.)

There is another rule which relieves this bill of even the semblance of multifariousness. It is this: When a statute creates an offense in several specifications, either of which, when violated, is a distinct offense, a charge in the indictment of a violation of all the specifications is the charging of a single offense only, where but one penalty is attached. (*State* v. *Myer,* 1 Speers, 305; *State* v. *Helgen,* 1 Speers, 310, vol. 5 U. S. Digest, p. 151; *State* v. *Palmer,* 4 Miss. 453; *United States* v. *Dickinson,* 2 McLean, 325; *Kane* v. *The People,* 8 Wend. 203; *People* v. *Rynder,* 12 Wend. 425.)

The word "feloniously," as used in the bill, has a legal signification and obviates the necessity of particularly enlarging upon the facts and circumstances of the offense. (Russell's Law Dict., "Feloniously;" *State* v. *O'Connell,* 6 Minn. R. 279.)

The Court, in sustaining the demurrer to this indictment, has violated the whole spirit and very letter of the law regulating criminal practice in this State. All niceties are abolished. The whole purpose of an indictment now is to convey to the defendant the particular crime with which he is charged. The soul and life of an indictment under the modern and sensible practice is defined in sec. 243 of Laws of 1861 (pp. 460–1). This bill contains every element required by that section.

*R. W. Clarke*, for Respondent.

Under our statute the essential averments of an indictment should be the same as at common law. (9 Cal. 55; 12 Cal. 294.)

The offense is purely statutory, and is neither charged in the language, or substantially in the language, of the statute.

The indictment does not show clearly what offense has been committed, or that any offense has been committed, and as nothing can be taken by intendment, reference, or implication, and as it must appear—

*First*—That some offense, and

*Second*—What offense has been committed, the indictment is bad. (Wharton's Am. Crim. Law, p. 367, secs. 365, 366.)

The name of the defendant must be pleaded in that part of the indictment charging the facts of the crime, and should be repeated with every material averment. (Wharton's Am. Crim. Law, secs. 233, 234.)

The venire should be properly laid and distinctly pleaded. (Wharton, secs. 277, 278, 279.)

The indictment attempts to charge three distinct offenses. Under the statutes of Nevada but one offense can be charged in one indictment.

The indictment shows the license to have been properly issued by the Auditor—hence, no offense.

Opinion by LEWIS, C. J., full Bench concurring.

The defendant was indicted by the Grand Jury of Ormsby County, under section 85 of the Revenue Act of 1862.

The indictment sets forth that the defendant, on the 3d day of September, A. D. 1862, was elected Tax Collector of the County of Ormsby, and that on the 12th day of the same month he duly qualified and entered upon the duties of his office; that prior to the first Monday of May, A. D. 1864, there had been issued to the defendant, as Tax Collector, by the Auditor of the County of Ormsby, a license, authorizing the licensee to retail spirituous, malt and fermented liquors, the same being a fifteen dollar license; that on the 19th day

of June, A. D. 1864, at said County of Ormsby, the defendant, instead of returning the said license to the Auditor on first Monday of May, A. D. 1864, as required by law, willfully, unlawfully and feloniously retained, and had in his possession, the same license, with intent to put the same in circulation. It is also charged that on the 19th day of June, A. D. 1864, in the County of Ormsby aforesaid, the defendant did willfully, unlawfully and feloniously issue the *said* license; that on the 19th day of June, A. D. 1864, in the County of Ormsby, the defendant unlawfully, willfully and feloniously altered the license aforesaid, from a fifteen dollar to a forty-five dollar license, and willfully, unlawfully and feloniously issued the same to certain parties mentioned.

To this indictment defendant interposes a demurrer, assigning several grounds, only two of which need be noticed.

*First*—That the indictment does not state facts sufficient to constitute a public offense; and

*Second*—That it does not substantially conform to sections 234 and 235 of the Criminal Practice Act of the State of Nevada.

This demurrer was sustained by the Court below and an order made re-submitting the case to the next Grand Jury of the county. From the ruling of the Court, sustaining the demurrer, the people appeal.

A preliminary motion was made by defendant's counsel to dismiss the appeal, upon the ground that the final judgment not having been entered no appeal could be taken; that no appeal will lie from an *order* sustaining a demurrer to an indictment, and some authorities from California are relied on to sustain this position.

But these decisions were based upon a statute essentially different from ours; and I do not think it necessary to look beyond the Practice Act itself to determine this question. Indeed, section 469 seems to cover this case exactly. It provides "that the party aggrieved in a criminal action, whether that party be the people or the defendant, may appeal as follows: First, to the Probate Court of the county from a final judgment of a Justice's Court; Second, to the Supreme Court from a final judgment of the District Court, in all criminal

cases; also, *from an order of the District Court allowing a demurrer, granting or refusing a new trial.*"

There can be no diversity of opinion as to the interpretation to be put upon this language. The last clause of the section allows an appeal from " an *order of the District Court allowing a demurrer.*" But it is claimed by defendant's counsel that as it is the duty of the Court under section 289 of the Criminal Practice Act, to " give judgment either allowing or disallowing " the demurrer, it could not have been intended to allow an appeal where no judgment is so given upon sustaining the demurrer.

I can see no reason for putting so restricted an interpretation upon these general words of the statute; the reason is all against it. If the appeal is to be confined to cases where final judgment is rendered, the latter portion of subdivision second of section 469 is utterly nugatory and of no force or effect; because an appeal from a final judgment is expressly provided for by the first portion of the section. Indeed, such an interpretation can only be adopted by disregarding the cardinal rule, that in the construction of a statute effect is to be given, if possible, to every clause and section of it. If any effect is to be given to the words, " Also, from an order of the District Court, allowing a demurrer," we must hold that an appeal will lie from an order sustaining the demurrer, regardless of whether judgment is entered or not.

Again, there is a complete answer to the position taken by defendant's counsel in the language of the section itself, which allows an appeal from an *order;* and an *order* can in no sense be considered a judgment. It would be difficult to find words which would more clearly express the intention of the Legislature than those employed in section 469. The first clause of subdivision second authorizes appeals from final judgments, and the second clause provides for an appeal from an order allowing a demurrer, which is precisely the case at bar. I think, therefore, that this appeal was properly taken.

This brings us to the consideration of the sufficiency of the indictment upon which the defendant was arraigned.

We recognize the fact that the tendency of all modern legislation and judicial decisions is to ignore the correctness of form

People *v.* Logan.

which was required at common law, but it is a tendency per-
haps more to be deplored than encouraged. By this attempt
to ignore the formulæ of the common law, our entire system of
pleading has gradually passed from the extreme of technical
exactness into the opposite, of loose, careless and slovenly
inaccuracy, which is more fruitful in perplexing and annoying
the Courts than in furthering the ends of justice.

The express provisions of our Practice Act, of course, can-
not be disregarded, but Courts should not go beyond its strict
letter to encourage carelessness in pleading.

The indictment in this case I think radically defective.
That section of the Revenue Act under which it was found,
provides that, "if either the Treasurer, County Auditor,
Tax Collector or any person shall have in his possession,
with intent to circulate, or put in circulation, any other license
than those properly issued to the Tax Collector under the pro-
visions of this Act, the person so offending shall be guilty of
felony, and on conviction, be sentenced," etc.

The words of the statute creating the offense, or words of
similar import, should be used in the indictment. In this case
the having in possession with intent to circulate, or putting in
circulation any license other than those properly issued, is what
constitutes the offense; but nowhere in this indictment are
these words, or words of a similar import used, but on the con-
trary it is expressly charged that on the 19th day of June, A. D.
1864, the defendant did "willfully, unlawfully, and feloniously
issue" a license which had been *properly* issued on the part of
the plaintiff to him. This surely is no crime, but the strict
performance of his duty. But it is urged on behalf of the people,
that as the defendant did not return the license in question to
the Auditor on the first Monday in May, as required by law,
therefore, it must be taken to be a license other than one prop-
erly issued. In other words, that the failure to return a license
properly issued, at the time required by law, *ipso facto*, makes
it a license improperly issued. I do not think this position
tenable. How the mere neglect to return a license once regu-
lar and properly issued, will change it so as to make it a license
other than one properly issued, I am unable to see.

There is a further answer to this position of counsel, how-

ever, which is conclusive, even if it be admitted that such a license was one improperly issued : that is, it is not directly charged in the indictment to be such. The facts are stated that the defendant issued to Fulston & Bro. a license which, by law, he should have returned to the Auditor a month prior thereto ; *arguendo* we might say, that it was therefore a license improperly issued ; but this is argumentative, and not good even in civil pleading, much less so in an indictment. (Com. Dig., pleading.)

When the defendant was sued for taking away the goods of the plaintiff, he pleaded that the plaintiff never had any goods ; this was an infallible argument, but it was held not to be a good plea. The charge in an indictment should always be positively laid, and not inferentially. Archbold says : " The want of a direct allegation of anything material in the description of the substance, nature or manner of the offense, cannot be supplied by any intendment or implication whatever." (Archbold's Criminal Practice and Pleading, 87.) So strictly observed is this rule, that " in an indictment for murder the omission of the words *ex malitia proecogetata* is not supplied by the words *felonice murdravit*, although the latter words imply them." Ib.

Again, counsel contend that the indictment charges the defendant with having changed the license from a fifteen to a forty-five dollar license before issuing it, and that therefore the conclusion is irresistible that it was a license other than one properly issued. True, the argument is infallible ; but the point is subject to the same objection as the other ; it is argumentative.

Numerous other objections are urged to the indictment, but we do not think it necessary to pass upon them. The ruling of the Court below is sustained.