ALFRED MOLINE V. STATE OF NEBRASKA.

FILED JANUARY 21, 1903. No. 12,693.

1. **Felony**: INFORMATION: INDICTMENT: NATURE AND CAUSE OF ACCUSATION. A person accused of a felony must be charged by an information or indictment which discloses the "nature and cause of accusation" preferred against him.

2. ———: ———: ———: ———: OFFENSE: INTENDMENT: RECITAL: INFERENCE. Such indictment or information must charge explicitly all that is essential to constitute the offense. It can not be aided by intendment, nor by way of recital or inference, but must positively and explicitly state what the accused is called upon to answer.

Syllabus by court; catch-words by editor.

**3. Information.** Information examined, and *held* not to state facts and circumstances essential to constitute the crime of which the defendant was convicted.

Error from the district court for Phelps county. Prosecution under section 125 of the Criminal Code, for obtaining signature to a certain warranty deed. Tried below before Adams, J. Conviction. *Reversed.*

*Hector M. Sinclair, John L. McPheely, S. A. Dravo* and *William P. Hall,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state:

In the first place we confess to the court that the state has rarely, if ever, met an attempt more able and more lawless to acquit a thorough scoundrel and cheat on purely technical grounds than the one confronting it in this case. The evidence is clear and conclusive of the absolute truth of every allegation in the information contained. In fact no pretense was made on the trial of the case that the complaining witness had been defrauded of anything less than his 160-acre farm.

The history of the crime may be briefly summarized as follows: Mr. Krapf was an old man, 66 years of age, owning the legal title, occupying and farming a quarter section of land in Phelps county, Nebraska, worth about $2,500. He was acquainted with Moline, the defendant, who was ostensibly a real estate dealer living in Holdrege, Nebraska, but operating in the wide fields of several states. Moline was the possessor of a written instrument purporting to be a warranty deed to certain lands located in the state of Indiana, made out in blank as respects the grantee and signed by one Miller. The deed was a fraud and a forgery. Miller was a fictitious person, or at least one having no title or interest in the Indiana land. The owner of the Indiana lands testified to his ownership thereof, producing a deed therefor. Moline conceived the idea

that to trade the Indiana deed to Krapf for a deed to his
quarter section would be a profitable deal. To further
this design, he induced one Anderson, by offering him $700
for his services, to pretend to Krapf that he, Anderson,
owned the Indiana land and would trade it for Krapf's
homestead. This Anderson did, but when it came to make
the transfer his conscience awakened and he refused to
trade, advising old man Krapf to keep his Phelps county
farm. Moline was enraged, and applied vigorous and
profane language to his co-conspirator. Krapf went home;
but Moline was not to be so easily balked; his determina-
tion to carry out the original plan to steal a farm did not
falter or hesitate; he pursued Krapf, and claiming to have
gotten by a trade the Indiana farm himself, proposed that
he would take Anderson's place in the transaction, pro-
vided the old man would give him $200 in addition to his
land. Krapf finally consented, but executed his note for
the $200, not having the cash. Krapf's name as grantee
was written in the Indiana deed and Krapf and his wife
executed and delivered a warranty deed of the Phelps
county farm to Moline. Within a day Moline redeeded
the Krapf land to a third party and Krapf was left home-
less and landless because he got nothing when he accepted
the Indiana deed. There is some evidence in the record
that Moline had offered to reinvest Krapf with title to his
purloined farm as evidence of his prior good faith in the
trade; but the evidence shows that the offer was made
after this prosecution had begun and on condition that the
prosecution should end; Krapf was unwilling as well as
unable to comply with the condition. The utter fraud and
cheat of the transaction was confessed when in open court,
upon the cross-examination of Krapf, the defendant ten-
dered him deeds to his farm signed by both Moline and
Moline's grantee. The record is pathetic at this point
where the old man said, in reply to defendant's interroga-
tory, that he was willing to accept and keep the tendered
deeds. It will be patent to the court when examining the
testimony in this case that this "deed tendered" was a

grand-stand play, made for the sole purpose of bolstering the sham theory of the defense, that Moline had acted in good faith in the transaction and that as soon as he discovered the Indiana deed to be a fraud he had endeavored to give back the stolen farm. This claim is utterly false and deliberately so. If Moline had been acting in good faith, it would not have been necessary for him to invite Anderson's co-operation in the deal at an expense to himself of $700. If Moline was innocent of the character of the Indiana deed, why did he seek to have another than himself claim to possess and own it? Where did Moline get that deed? He claimed to witnesses before the trial to have gotten it from different persons and his explanation on that subject when he testified is far from removing the conviction that he got it from another co-conspirator made and executed for the very purpose to which it was afterwards devoted in victimizing Krapf. If there was ever a crime proved or punishment merited, it is proved and merited in this case. The question then is, are there technical reasons sufficiently substantial to vacate the finding of the jury and the sentence of the court so richly just?

.An information is sufficient if it sets forth all the ingredients necessary to constitute the offense, though not in the language of the statute.

A statutory offense may be charged in language other than that employed in the statute, provided the language used sets out all the facts and ingredients necessary to constitute the offense defined by the statute. "Every material constituent of the offense," *Smith v. State*, 63 Ala., 55; "whatever is made by statute an essential part of the offense," *Conyers v. State*, 50 Ga., 103; "all the particulars that enter into the statutory description of the offense, either in the language of the statute or other equivalent language," *State v. Wright*, 52 Ind., 307; "the substance of the statutory definition of an offense," *United States v. Dickey*, 1 Morris [Ia.], *412; "need not designate it by the name employed in the statute," *State v. Rigg*, 10 Nev., 284; "facts which the statute requires to

constitute the offense," concluding *contra formam statuti*, *People v. Stockham*, 1 Parker Cr. R. [N. Y.], 424. "A criterion of the sufficiency of an indictment for a statutory offense is that the averments should make it certain that the act charged is an act forbidden by the statute, and so exclude any assumption that the indictment may have been proved and the defendant may still be innocent. This is all that is required." *State v. Melville*, 11 R. I., 417.

"In charging the commission of an offense in an indictment, it is not necessary that the exact words of the statute be used, provided the words employed are the equivalents in meaning of those contained in the statute." *Whitman v. State*, 17 Nebr., 224.

Following this case, the court has reaffirmed the above rule in *Kirk v. Bowling*, 20 Nebr., 260; *Hodgkins v. State*, 36 Nebr., 160; *Wagner v. State*, 43 Nebr., 1; *Bartley v. State*, 53 Nebr., 310; *Carrall v. State*, 53 Nebr., 439.

HOLCOMB, J.

The defendant was convicted and sentenced to the penitentiary for three years on the charge of having by false and fraudulent representations obtained the signature of one Frederick Krapf to a written instrument, viz., a warranty deed, of the value of more than $35, contrary to the provisions of section 125 of the Criminal Code. To secure a reversal of the judgment of conviction, he prosecutes error.

The criminal prosecution of the defendant has the appearance of having been instituted on the theory that under the provisions of the section mentioned he was guilty of a felony for having obtained by false and fraudulent representations title to and the possession of a quarter section of real estate of the alleged value of $2,500. On the trial, however, it seems that this theory was abandoned and the information construed as charging the crime of obtaining by false pretenses the signature of the owner of the land to a warranty deed, by which the transfer of title was effectuated. The reasons for the view we take of the record as just expressed will appear more clearly from

what follows.    Section 125 of the Criminal Code, in so far as it is material to an intelligent discussion of the question now under consideration, is as follows:    "If any person, by false pretense or pretenses, shall obtain from any other person, * * * any money, goods, merchandise, credit or effects whatsoever with intent to cheat or defraud such person, * * * or if he shall obtain the signature or indorsement of any person to any promissory note, * * * or any other instrument in writing, fraudulently or by misrepresentation, if the value of the property, or promissory note, or written instrument * * * fraudulently obtained or conveyed as aforesaid, shall be thirty-five ($35) dollars, or upwards, such person so offending shall be imprisoned," etc.

The information, after charging sufficiently the facts constituting the alleged false and fraudulent pretenses, continues in the following language:  ."That relying upon and believing in said false pretenses and representations of the aforesaid Alfred Moline then and there made the aforesaid Frederick Krapf was induced to give up his property to the said Alfred Moline and then and there traded, conveyed and delivered by warranty deed to the aforesaid Alfred Moline the southeast quarter (S. E. ¼) of land in section twenty-four (24), town five (5), north of range twenty (20), west of 6th P. M., in Phelps county, Nebraska, of the value of $2,500."

On the submission of the cause to the jury at the trial, after the evidence was heard, among other instructions given them the following language was made use of:  "The prosecution in this case, seeks a conviction under that part of section 125, which says: 'If he shall obtain the signature * * * of any person, * * * to any other instrument in writing, fraudulently and by misrepresentation, he shall be imprisoned,' etc.  The state has not in specific terms charged that defendant, by false and fraudulent representations, obtained the signature of the complainant to any instrument in writing, but does charge that by reason of such false and fraudulent representations, the said Krapf

conveyed by warranty deed, the land situated in Phelps county, Nebraska, to the defendant."

In the next instruction it is said: "You are instructed that the word 'deed' as used in the information and in these instructions, in itself imports a written instrument, and should come within the term, 'any other instrument in writing,' as used in said section 125 of the Criminal Code. You are also instructed that the language used in the information, to wit: 'That said Frederick Krapf was induced to give up his property and then and there conveyed and delivered by warranty deed to the aforesaid Alfred Moline, the southeast quarter of section 24, township 5, range 20, in Phelps county, Nebraska,' would fairly import that said Moline obtained the signature of the complainant to an instrument in writing such as is contemplated in section 125 of the Criminal Code aforesaid."

It is now earnestly insisted by counsel for the accused that the allegations of the information are not sufficient to charge the offense of which he stands convicted. In other words, the contention is that the information does not charge explicitly and positively and with sufficient precision that by false and fraudulent representations defendant obtained the signature of the said Krapf to a written instrument of the value of $35 or over. It is argued that it is charged with sufficient certainty and precision that the real estate described was obtained fraudulently, which, if warranted by statute, would constitute a good charge of obtaining property fraudulently, but that, without indulging in inferences and conjectures unwarranted by any sound rule of the criminal law, it can not be said that the offense of obtaining one's signature to a written instrument of the value mentioned, by false and fraudulent pretenses, is charged in the information. It is asserted that the defendant has not had the opportunity of being confronted with an information disclosing the "nature and cause of accusation"* against him, and a copy of such information furnished, as is guaranteed to him by the

*Constitution, art. 1, sec. 11.

constitution.  The object of the constitutional guaranty is
doubtless for the purpose of having the accused informed
of the precise offense for which he must answer, and thus
enable him to meet and defend against that particular ac-
cusation, when judicially called upon to do so.   Speaking
of the purpose of such constitutional provisions and guar-
anties it is observed by a well-known author on criminal
jurisprudence: "Standing beside the presumption that the
defendant is innocent, they have compelled from the prose-
cuting power such a statement of the nature and cause of
the accusation as would impart to him, who is supposed to
know nothing of it outside of the written words, reason-
able information of what he is to encounter at the trial;
thus enabling him to collect his proofs, and avoid the in-
jury of a surprise.   Therefore the wisdom of the past—the
rules which the common law has established for the indict-
ment—should, as respects the substance of the accusation,
be the chief guide to what this constitutional provision
permits or forbids."   Bishop, New Criminal Procedure,
sec. 110.   The following authorities are also pertinent:
*People v. Olmstead,* 30 Mich., 431; *Mott v. State,* 29 Ark.,
147; *Conner v. Commonwealth,* 76 Ky., 714; *State v. Mace,*
76 Me., 64; *Norris v. State,* 33 Miss., 373; *State v. O'Fla-
herty,* 7 Nev., 153.

In *Wabash, St. L. & P. R. Co. v. People,* 12 Ill. App., 448,
it is said, with respect to the requirement that the essential
facts necessary to constitute the offense charged must be
stated directly and positively: "Every fact and circum-
stance stated in an indictment must be laid positively.
They can not be stated by way of recital, nor by way of ar-
gument or inference; the allegations must be in words
clear, direct and not argumentative or inferential."

Another court has said: "The want of a direct and posi-
tive allegation, in the description of the substance, nature,
or manner of the offense, can not be supplied by any in-
tendment, argument, or implication."   *State v. Paul,* 69
Me., 215.

To the same effect and in support of the same rule this

court has said: "An indictment must charge explicitly all that is essential to constitute the offense. It can not be aided by intendments, but must positively and explicitly state what the prisoner is called upon to answer." *Smith v. State,* 21 Nebr., 552, 556; *State v. Hughes,* 38 Nebr., 366, 369; *O'Connor v. State,* 46 Nebr., 157.

Numerous other authorities may be cited, as, for instance: *People v. Logan,* 1 Nev., 110; *State v. La Bore,* 26 Vt., 765; *Kearney v. State,* 48 Md., 16; *Allen v. State,* 13 Tex. App., 28; *State v. Collins,* 62 Vt., 195.

Does the information in the case at bar measure up to the requirements of the rule we have just adverted to? Can it be said without indulging in unwarranted inferences that Krapf, by means of the false pretenses alleged as the inducing cause thereof, was persuaded to place his signature on the warranty deed referred to? that the instrument was of the value of $35 or more, and that it was obtained from the complainant by the accused? These are all essential facts and circumstances to be alleged before it can be said the crime sought to be charged against the defendant is in fact stated with that fullness and certainty required to constitute the offense. Manifestly, what is alleged after charging the false and fraudulent pretenses is that Krapf was induced thereby to give up his property to the accused and then and there conveyed and delivered to him the quarter section of land described, which was of the value of $2,500. The qualifying phrase "by warranty deed" we regard as in the nature of a recital as to the means or instrumentality by which the delivery of the real property charged to have been falsely and fraudulently obtained was delivered to the accused. Certainly it takes something of a stretch of the imagination and indulgence in intendments, in our judgment not at all warrantable, to say that the false and fraudulent representations alleged induced the complainant to sign the warranty deed mentioned. For all that appears, the deed may have been executed, conceding the legal title to have been in the complainant, Krapf, before the alleged false representa-

tions were made. The worthless deed to the land which it is alleged was conveyed to Krapf for his real estate was manifestly executed before any of the alleged false representations were made. Why may it not be also inferred that Krapf, although owning the land, had executed a deed in anticipation of a sale of it, which it seems he was desirous of making, and that the false representations consisted in inducing him to deliver the deed to the accused, with the possession of the real estate conveyed thereby? Such circumstances would not, in our opinion, constitute the offense sought to be charged, *i. e.*, obtaining his signature to an instrument of value, and yet everything alleged may be true, and the transaction have taken place as we have just delineated.

Again, suppose the accused and Krapf enter into bonafide negotiations for the purchase of Krapf's land and the deed is executed in pursuance of such negotiations, but before the trade is finally consummated the accused offers to and by means of the false pretenses alleged obtains the deed thus executed for the worthless conveyance given in exchange as alleged in the information; can it then be said that the statute has been violated and the crime of obtaining a signature to a written instrument of value committed as therein denounced? It seems to us the answer must be in the negative. These illustrations, and the mind can conceive of many, but serve to emphasize the fact that the information does not charge explicitly and directly the essential ingredients necessary to constitute the offense of which the accused was convicted. It is manifest that the information would not put him on his guard as to the necessity of defending to the charge of having obtained the signature of Krapf to an instrument by false and fraudulent pretenses. Any lawyer, much more so a layman, upon reading the information, would at once infer therefrom that it was sought to charge the defendant with obtaining the real estate described therein by false and fraudulent representations and pretenses, and that the execution of a deed therefor, and the manner in which the

same was done or caused to be done, was of no vital importance. Had such charge been directly made he might have been able, as suggested by the preceding illustrations, to have successfully defended against it. Presumably, he was innocent of the crime charged or sought to be charged, and should have been fairly and explicitly advised by the information of the exact nature and cause of the accusation preferred against him.

It may be doubtful whether it is charged in the information that the instrument to which his signature is claimed to have been obtained (the warranty deed) is of any value. Manifestly, the value of it is not directly alleged, because the only statement as to value without doubt refers to the real estate and not to the instrument by which it was conveyed. It may be, and is, argued that the allegation of value as to the real estate is an allegation of value of the instrument by which it was conveyed. The question, however, is not here determined, as we regard other defects in the information more vital. The information we regard as unquestionably fatally defective in not charging in direct terms that the deed mentioned was obtained by the accused from the complainant. It seems that the proposition is hardly open to argument that in order to constitute the crime sought to be charged it must be explicitly alleged in the information, conceding that it sufficiently alleges that the signature of the complainant to the instrument was obtained by false pretenses, that such instrument was obtained by the accused from the complainant; or, to state it in another form, a crime is not charged until it is alleged, not only that the signature was obtained to the instrument fraudulently, but also that there was a delivery of such instrument. There is nothing in the information that charges the essential fact that the deed was delivered to and obtained by the accused. What is charged, is that the land was conveyed and delivered by means of a warranty deed. The allegation of itself is largely in the nature of a conclusion rather than a statement of fact. Delivery and possession of the land may have in contemplation of the

State v. Weston.

parties taken place without any delivery of the deed. Its simple execution may have been deemed sufficient for the completion of the trade and delivery of the land. At most, the phrase "by warranty deed" is in the nature of a recital describing how or by what means the land was delivered which is the property that is directly charged to have been obtained by false pretenses. In principle, the defect in the information just mentioned comes quite within the rule announced in the case of *State v. McGinnis*, 33 N. W. Rep. [Ia.], 338, in which it is held, under a statute quite similar to ours, that an indictment charging a defendant with having obtained the signature of a person to a chattel mortgage by means of false pretenses, but that does not charge the delivery of the mortgage, charges no crime.

Without examining the other errors complained of, we are constrained to the view that the information does not contain essential and necessary allegations to charge the accused with the crime of which he was convicted and sentenced to imprisonment, and for this reason alone the judgment of the district court must be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

NOTE.—Section 125 of the Criminal Code constitutes section 2203 of Cobbey's Annotated Statutes; see page 763, volume I., where the Nebraska decisions will be found in a note.—W. F. B.