## PEOPLE v. JOHNSON.

1. CRIMINAL LAW—FALSE PRETENSES—INFORMATION—SUFFICIENCY —FRAUD—OBTAINING MONEY BY FALSE PRETENSES.

Averments of an information in a prosecution for obtaining money under false pretenses that plaintiff falsely represented to a bank that he had information concerning the financial affairs of a company and had a statement showing its assets and liabilities, which he presented to the bank officials to obtain credit for the company, that the assets were exaggerated and liabilities understated, and the bank was deceived by the statement and was induced to accept a note of the company thereon, were sufficient to sustain a conviction of an offense and violation of 3 Comp. Laws, § 11575 (3 Comp. Laws 1915, § 15320). STONE, C. J., and KUHN and BIRD, JJ., dissenting.

2. SAME—INTENT—FRAUD.

Three things must concur to constitute the crime of obtaining money under false pretenses: (1) the intent to defraud, (2) the false pretense, made with the intent to deceive, and (3) the fraud accomplished.

3. SAME—PAYMENT—EVIDENCE.

Where the bank at the time the statement was presented to it held the note of said corporation for $996.28, which was .reduced by the payment of $500 and a new note given, no payment of money or giving of credit was involved, and the facts did not support the allegations of the information.

Error to superior court of Grand Rapids; Stuart, J. Submitted November 5, 1914. (Docket No. 160.) Decided February 26, 1916.

Charles L. Johnson was convicted of obtaining money under false pretenses. Reversed; respondent discharged.

*Grant Fellows,* Attorney General, *L. W. Carr,* Assistant Attorney General, and *Earl F. Phelps,* Prosecuting Attorney, for the people.

*Clapperton, Owen & Hatten (William S. Forrest,* of counsel), for respondent.

KUHN, J. (*dissenting*). The respondent was convicted upon an information containing two counts and charging him and one Frank Jones in the first count with having obtained, by means of certain false pretenses, from the Old National Bank of Grand Rapids, Mich., the sum of $496.28 lawful money, and in the second count with having conspired together to obtain said amount from the bank by false pretenses. The verdict of the jury was as follows:

"And say upon their oath that they find the respondent guilty of false pretenses over $25, in manner and form as the people have in their information in this cause charged,"

which it is conceded can only be held to refer to the first count in the information.

The first count sets up two sets of false representations, together with the negations thereof, and is as follows:

THE SUPERIOR COURT OF GRAND RAPIDS.
State of Michigan, County of Kent, City of Grand Rapids.

William B. Brown, prosecuting attorney for the county of Kent aforesaid, for and in behalf of the people of the State of Michigan, comes into said court, in the September term thereof, A. D. 1911, and gives it here to understand and be *informed,* that one Charles L. Johnson and Frank G. Jones, on, to wit, the 22d day of May, A. D. 1911, at the city of Grand Rapids, in the county of Kent aforesaid, with intent to cheat and defraud the Old National Bank, a corporation, having its office and principal place of

business in the city of Grand Rapids, Michigan, and to fraudulently obtain four hundred ninety-six and twenty-eight one-hundredths dollars, lawful money of the United States, from said Old National Bank, a corporation as aforesaid, *did designedly falsely represent and pretend* to the said Old National Bank, a corporation, aforesaid, that they, the said Charles L. Johnson and Frank G. Jones, were the agents and representatives of the American Electric Fuse Company, a corporation, and were knowing to and had accurate and positive information as to the business and financial affairs and condition financially of said American Electric Fuse Company, and that they knew the sums and amounts of the assets and of the liabilities of said American Electric Fuse Company; *that they had caused to be made and had in their possession a certain statement* showing the sums and amounts of the assets and liabilities of said American Electric Fuse Company, on, to wit, January 14, 1911, the first line thereof and thereon being "Summary January 1st, 1911," *which statement and summary the said Charles L. Johnson and Frank G. Jones presented* and caused to be presented and filed with the Old National Bank, a corporation aforesaid, on, to wit, January 14, 1911, *for the purpose* of showing to said Old National Bank the financial condition of said American Electric Fuse Company, and for the purpose thereby of obtaining credit to said Charles L. Johnson and Frank G. Jones and to said American Electric Fuse Company, from said Old National Bank, and for the purpose of showing the solvent and prosperous condition of said American Electric Fuse Company, so that said American Electric Fuse Company and the said Charles L. Johnson and Frank G. Jones could borrow and receive money from said Old National Bank on the credit of said American Electric Fuse Company, and for the purpose of borrowing money from said Old National Bank by and for and obtaining credit for the said American Electric Fuse Company, *said summary showing* that the assets of said American Electric Fuse Company were upwards of $709,000, and that the total liabilities of said American Electric Fuse Company, on, to wit, January 14, 1911, were not to exceed $163,333.08, and for the purpose of showing to and assuring the

said Old National Bank that if it would loan and advance moneys to said American Electric Fuse Company, and that if said Old National Bank would discount the notes of said American Electric Fuse Company, notes payable directly to said American Electric Fuse Company, and notes made by it, that any and all sums of money which would be paid and advanced by said Old National Bank to, for, and to the credit of said American Electric Fuse Company, should the same be paid on notes direct to, or on notes payable to said American Electric Fuse Company and by it indorsed, or money borrowed by said American Electric Fuse Company from said Old National Bank, or placed to the credit of said American Electric Fuse Company by said Old National Bank, that said Old National Bank could, with safety, advance all such sums of money to said American Electric Fuse Company, and that all such sums of money so paid and advanced to the said American Electric Fuse Company, or upon its order or indorsement by said Old National Bank, would be repaid to said Old National Bank by said American Electric Fuse Company promptly and when the same became due.

That after filing the above-mentioned summary with the Old National Bank aforesaid, and knowing that said summary had been received by said Old National Bank and relied upon and believed by said Old National Bank to be a true and correct statement of the assets and liabilities of said American Electric Fuse Company, on, to wit, the 22d day of May, 1911, said Charles L. Johnson and Frank G. Jones presented and caused to be presented to said Old National Bank for payment and credit to the account of the American Electric Fuse Company a certain promissory note, in words and figures as follows:

"CHICAGO, May 22, 1911.  19.. No...

"Two months after date we promise to pay to the order of American Electric Fuse Co., $496.28, four hundred ninety-six & 28/100 dollars, payable at Continental and Commercial National Bank, value received, with interest at the rate of 6 per cent. per annum.

"WESTERN TELEPHONE CONSTRUCTION CO.

"Due ..............          K. P. ROBERTSON, PRES."

on the back of which note was the indorsement, "American Electric Fuse Co., by Frank G. Jones, Pres.," *and falsely and fraudulently represented and pretended* to said Old National Bank, that said note was good and a legal note and a legal obligation, and that the signature thereto was genuine, and that said note was given to said American Electric Fuse Company for sufficient and valuable consideration from said American Electric Fuse Company, and that there was then due to said American Electric Fuse Company on said note the sum of $498.28, and that if the said Old National Bank would then pay to the said American Electric Fuse Company the sum of $496.28, and would then place to the credit of and in the account of said American Electric Fuse Company with said Old National Bank, in said Old National Bank, said account being a commercial check account, the sum of $496.28, the amount for which said note was given, on and for said note, the said note with the indorsement thereon would be delivered and transferred to said Old National Bank in consideration therefor, and that said Old National Bank would be amply and sufficiently secured for the amount so advanced to the credit of said American Electric Fuse Company on and for said note as was fully shown by the solvent condition of said American Electric Fuse Company by said summary, and which repayment and security was guaranteed by the said indorsement on the back of said note, and the said Old National Bank, believing the said summary and the statements and representations as to the assets and liabilities of said American Electric Fuse Company as therein contained, and believing the representations so made by the said Charles L. Johnson and Frank G. Jones, and relying thereon, was deceived thereby, and the said Old National Bank received the said note from said Charles L. Johnson and Frank G. Jones, agents of and representing the said American Electric Fuse Company, and paid to said American Electric Fuse Company at the instance of said Charles L. Johnson and Frank G. Jones, and to its said representatives, Charles L. Johnson and Frank G. Jones, the sum of $496.28 on and for said note, and on and for said note said Old National Bank placed to the credit of said American Electric Fuse Company

in said Old National Bank, in the commercial check account of said American Electric Fuse Company, the sum of $496.28 in consideration of and receipt of said note as aforesaid, and the said Old National Bank, a corporation aforesaid, believing the said false pretenses and representations so made as aforesaid by the said Charles L. Johnson and Frank G. Jones, it, the said Old National Bank, a corporation, was then and there deceived thereby, and was then and there induced by means of the said false pretenses and representations so made as aforesaid, to deliver and did then and there deliver $496.28, lawful money of the United States of the value of $496.28, of the money and property of it, the said Old National Bank, a corporation, to the said American Electric Fuse Company, and to said Charles L. Johnson and Frank G. Jones, as aforesaid.

And the said Charles L. Johnson and Frank G. Jones did then and there designedly, by means of said false pretenses and representations so made as aforesaid, unlawfully and fraudulently obtain from the said Old National Bank, a corporation, the said sum of four hundred ninety-six and 28/100 dollars of the moneys, goods, and property of the said Old National Bank, a corporation, with intent then and there to cheat and defraud it, the said Old National Bank, a corporation, of the same, they, the said Charles L. Johnson and Frank G. Jones, then and there well knowing the pretenses and representations, so as aforesaid by them made, to be false. And in truth and in fact, the said representations so as aforesaid by them made were false.

And whereas, in truth and in fact, the said summary statement filed with said Old National Bank on, to wit, January 14, 1911, as aforesaid, purporting to show the assets and liabilities of said American Electric Fuse Company, was a false statement, did not show the financial condition of said American Electric Fuse Company, did not show the condition of the financial affairs of said company, and the assets of said American Electric Fuse Company, at the time said summary was filed with said Old National Bank as aforesaid, were far less in amount than therein stated, and the assets of said American Electric Fuse Company were greatly overstated in said summary, and the liabilities

of said American Electric Fuse Company were very much more than as stated in said summary, and the liabilities of said American Electric Fuse Company were greatly in excess of the assets of said company at the time said summary was filed with said Old National Bank.

And the said American Electric Fuse Company was not able to pay its debts, and was not able to pay the sums and amounts by it owed, and was not able to pay the sums credited to its account as aforesaid by said Old National Bank on the note and at the time aforesaid, and said note was not given for a sufficient or valuable consideration, and no consideration was given whatever by said American Electric Fuse Company for said note, and said note was made at the instance and direction of said Charles L. Johnson without any consideration therefor, and upon which no sum was ever due to said American Electric Fuse Company, and by said Johnson caused to be presented to said Old National Bank as aforesaid for the purpose of realizing money thereon to the said American Electric Fuse Company, and to the said Charles L. Johnson and Frank G. Jones, and said note was not a legal note, the signature thereto was not genuine, and said note was wholly worthless and of no value at the time it was presented and accepted by said Old National Bank as aforesaid, and said Charles L. Johnson and Frank G. Jones well knew at all times that said note was absolutely worthless and of no value, to the great damage and deception of the said Old National Bank, a corporation aforesaid, and to the evil example of all others in like case offending, and against the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan.

While a number of questions are raised, as to the information, the sufficiency of the verdict, and the charge of the court, the important question to first determine is whether in the first set of representations set forth in the information as drawn there is a sufficient allegation of a false pretense.

Upon close analysis, the information is found to

charge the responaent with the following false pretenses:

(1) That he was an agent of the Fuse Company.

(2) That he had accurate knowledge of its financial affairs.

(3) That he knew the amounts of its assets and liabilities.

(4). That he, with Jones, had had made and had in possession "a certain statement showing" the assets and liabilities of the company on January 14, 1911.

Following the paragraph which sets up the last pretense are four paragraphs in which are set forth the nature, purpose, and filing of the statement. As to these matters, the court is informed:

That respondent presented it to the bank on January 14, 1911;

For the purpose of showing the company's financial condition and obtaining credit and borrowing money; and

That the summary showed the assets to be $709,000 and liabilities $163,333.08.

But these are not facts which the respondent is charged to have pretended falsely. Assuming that these facts about the statement and its purpose were true, respondent is charged in the information only with having falsely pretended that he had this statement in his possession, without saying anything about its contents. And even could the information be held to have charged the last-enumerated facts to have been pretended falsely, their truth is not negatived. On the contrary, their truth is admitted, and they cannot, therefore, be considered as elements of a crime.

It is said that the bank was induced by the respondent's representations to part with its money. As to this, it can be said: *First,* the pretense charged did not induce the bank to advance money or credit. What actually induced the bank to lend the money was the

belief that the assets exceeded the liabilities, a belief induced by the statement, not by the respondent's alleged pretense of having caused a certain statement to be made and having it in possession; *second*, the pretenses of having made a certain statement, this statement, and having it in his possession are not negatived. They are therefore taken to be true, and are not false pretenses. *Redmond* v. *State*, 35 Ohio St. 81. Indeed, these facts are conceded to be true.

It therefore follows that the alleged false representations of the assets and liabilities of the American Electric Fuse Company must be dealt with as nullities in the information, and as if they were no part thereof. An information must clearly charge the elements of the offense, and leave nothing to inference or intendment. 1 Bish. New Criminal Procedure (2d Ed.), § 325; *State* v. *Jamison*, 110 Iowa, 337 (81 N. W. 594) ; *Moline* v. *State*, 67 Neb. 164 (93 N. W. 228) ; *People* v. *Logan*, 1 Nev. 110; *Kearney* v. *State*, 48 Md. 16. The pretense upon which the prosecution is based in an action of this kind must be sufficiently and clearly specified in the information. *People* v. *Arnold*, 46 Mich. 268 (9 N. W. 406).

The second set of false representations are those concerning the promissory note in exchange for which the $496.28 was obtained. Can it be said that the first set of false representations may be rejected from the information as surplusage, and that it may be assumed that the jury found the respondent guilty of the pretenses contained in the second or latter set of false representations in the first count? Such was the holding in *State* v. *Vanderlip*, 4 La. Ann. 444, although a contrary conclusion was arrived at in *Commonwealth* v. *Atwood*, 11 Mass. 93, a decision which was questioned, it is true, but not overruled in *Commonwealth* v. *Tuck*, 37 Mass. (20 Pick.) 356. However, with ref-

erence to this, the difficulty here is that upon reading the charge of the court the conclusion is irresistible that the only theory upon which the first count was left to the jury was that the first element of the crime, viz., the false pretense, was the false representation of the assets and liabilities of the American Electric Fuse Company. Indeed, it is questionable whether there was sufficient evidence in the record connecting the respondent Johnson with any false representations as to the note to warrant the submission of this theory to the jury.

We are therefore of the opinion that the respondent was found guilty of a charge which was not properly alleged against him in the information, and the judgment must therefore be reversed, and the respondent discharged.

STONE, C. J., and BIRD, J., concurred with KUHN, J.

BROOKE, J. The information charges that the respondent did designedly falsely represent and pretend (1) that he had accurate and positive information as to the business and financial affairs and condition financially of the American Electric Fuse Company; (2) that he had caused to be made and had in his possession a certain statement *showing* the sums and amounts of the assets and liabilities of said American Electric Fuse Company on January 14, 1911; (3) which statement and summary respondent presented and caused to be presented and filed with the Old National Bank; (4) for the purpose of showing to said bank the financial condition of said Electric Fuse Company, and for the purpose thereby of obtaining credit to said respondent and said Electric Fuse Company. The information further avers that said statement was false (1) in that the assets of the Electric Fuse Company were greatly overstated in said summary; (2) that the lia-

bilities of said Electric Fuse Company were very much more than as stated in said summary; (3) the liabilities of said Electric Fuse Company were greatly in excess of the assets of said company at the time said summary was filed with said Old National Bank. It is further averred that the said Old National Bank, believing the said summary and the statements and representations as to the assets and liabilities of the Electric Fuse Company, was deceived thereby and received from said respondent a certain note, and thereupon paid to said Electric Fuse Company and the respondent the sum of $496.28 on and for said note.

I am of opinion that so far as the information is concerned it sufficiently charges the commission of a crime under the statute. Section 11575, 3 Comp. Laws (3 Comp. Laws 1915, § 15320). In *People* v. *Wakely,* 62 Mich. 297 (28 N. W. 871), it was declared that in a case involving a prosecution for false pretenses, three things at least must concur: *First,* the intent to defraud; *second,* the false pretenses made with the intent; and, *third,* the fraud accomplished. See, also, *People* v. *Luttermoser,* 122 Mich. 562 (81 N. W. 565).

While, therefore, I am unable to agree with my Brother KUHN in his conclusion that the information does not properly charge a crime, I am, for another reason, constrained to hold that the result reached by him is, after all, a proper one. The information charges that by reason of the false pretenses made by Jones and Johnson the bank paid to the Fuse Company, at the instance of Jones and Johnson, the sum of $496.28 on and for said note. The facts about the transaction seem to be that *at the time* the alleged false statement of assets and liabilities was deposited with the bank, the bank held the note of the Western Telephone Construction Company, indorsed by the American Electric Fuse Company for the sum of $1,496.28. This note was reduced at maturity $500,

a new note given for $996.28, and on May 22, 1911, this note at its maturity was again reduced $500, and a new note given for $496.28. It is this transaction which is counted upon in the information, and it is averred that the bank paid cash for this particular note, and that it was induced so to do by the false representations with reference to the assets and liabilities of the Electric Fuse Company.

It seems plain to me that on the 22d day of May, 1911, when the Electric Fuse Company paid $500 upon the note and gave a new note for $496.28, the bank did not give, nor did the American Electric Fuse Company obtain, any money or credit. It seems to me that the money had been given—the credit obtained—so far as this particular transaction is concerned, prior to making the false representations counted upon in the information.

The foregoing appears by the testimony of George E. MacKenzie, cashier of the Old National Bank. It is as follows:

Cross-examination:

"Q. This note, Exhibit B, in controversy in this case, was one of the notes given by the Electric Fuse Company—or discounted, in reduction of the original line as promised by Jones?

"A. These notes we got direct from Muskegon.

"Q. Yes, I understand that, and that was given in reduction of previous notes.

"A. No, sir; it was given for credit.

"Q. This Exhibit B is one of the remaining notes of the $20,000 of the Western Telephone Construction Company notes that you had discounted at the time you had that talk with Jones, isn't it?

"A. Yes. We had not discounted it in January. We discounted that the 22d day of May. At or about the time we received the note, Exhibit B, dated May 22d, one of the prior notes was due and payable. The amount was $996.28. We received that from the American Electric Fuse Company, Frank G. Jones, presi-

dent, for discount in the letter of March 15th, a note for that amount $996.28. When that note became due we sent it to Chicago for payment and it was paid.

"Q. And then you got in its place this note for $500 less, or $496.28, marked Exhibit B?

"A. We didn't get it in its place; that is an entire separate transaction.

"Q. That was in accordance with the arrangement and agreement you had with Mr. Jones that he would reduce $500 each time a note became due or $1,500 a month?

"A. $1,500 a month he was to reduce it.

"Q. When you made that arrangement it was the understanding that as notes became due, they would be taken care of by other notes and $1,500 a month in cash?

"A. We did not take another note in payment of that former note. That former note was entirely wiped out in Chicago.

"Q. In pursuance of that understanding you took this note for $500 less for discount?

"A. Yes, sir.

"Q. It was the same kind of note, executed in the same way as the note for $996.28 that you got in March, two months before?

"A. It was practically the same kind of note.

"Q. It amounted to this, didn't it, that in March you took a note of the Western Telephone Construction Company, indorsed by the American Electric Fuse Company, for $996.28, and discounted it by passing it to the credit of the American Electric Fuse Company?

"A. Yes, sir; we did that.

"Q. That was in pursuance of the agreement and understanding that you had with Mr. Jones the first part of January, 1911, that the discount paper—the amount of the discount paper would be reduced $1,500 a month?

"A. I presume, Mr. Clapperton, we put that through in view of having the former note reduced, or the prior notes reduced, as he had agreed to. The result would be that in March we discounted the note of the Western Telephone Construction Company for $996.28 and had it in the bank, and in May, two months after-

wards, we took and discounted the note of the same company indorsed by the same company for $500 less, or $496.28. Two months before we had discounted a similar note for $1,496.28.  *  *  *

"*Q.* And at the time of the complaint that you made in this case, this note upon which you based the complaint, for $496.28, was the last note of that series, and was not due, was it?

"*A.* That is so."

I am therefore of the opinion that a verdict should have been directed in favor of respondent on the ground that the proofs adduced failed to sustain the charges contained in the information.

The judgment should be reversed, and respondent discharged.

OSTRANDER, MOORE, and STEERE, JJ., concurred with BROOKE, J.

The late Justice MCALVAY took no part in this decision.