STATE OF MINNESOTA v. JOHN J. RUE.

May 19, 1898.

Nos. 11,108—(21).

Embezzlement of Notes — Indictment Sufficient without Name of Payee.
    1. An indictment for the embezzlement of certain promissory notes *held* sufficient, although it does not state the name of the payee of the notes.

Same—G. S. 1894, § 6709—Without Consent of Owner.
    2. In such an indictment, drawn under section 415 of the Penal Code, it is not necessary to state that the property was embezzled without the consent of the owner.

Same—Questions for Jury.
    3. *Held*, whether the defendant acted fraudulently or dishonestly, or derived any benefit from the transaction in which it is charged he embezzled his principal's property, was, on the evidence, a question for the jury.

Same—Agent and Trustee—Evidence.
    4. *Held*, the evidence warranted a finding that defendant was the agent and trustee of said principal, although he was also employed by another principal, which paid him for all of his services for both.

**Same—Corporation de facto—Evidence.**

5. The indictment stated that such first-named principal is a corporation. *Held*, the evidence showed that it was, at least, a corporation de facto, and that is sufficient.

**Same—Procuring Renewal of Notes to Third Person—Embezzlement.**

6. The defendant, as such agent, procured the maker of his principal's notes to renew the same, and make the new notes payable to a third party, who never owned or held them, and defendant subsequently converted them to his own use. *Held*, he was properly indicted for embezzling the new notes.

**Same—Proof of Signature—Error without Prejudice.**

7. *Held*, if the admission of certain evidence as to the genuineness of a signature was error, it was error without prejudice, because the instrument had already been introduced in evidence without objection on the ground that the signature had not been proved.

**Same—Evidence of Value—Expert—Specific Objection.**

8. An objection that evidence is incompetent, irrelevant and immaterial does not cover the ground that the witness has not shown himself competent to testify as to value as an expert.

**Same—Request to Charge—Reasonable Doubt.**

9. A certain request to charge as to reasonable doubt *held* to be an invitation to the jury to disagree, if possible, and it was properly refused.

**Same—Intent to Deprive True Owner of Property.**

10. The indictment charged that defendant embezzled the property with the intent to deprive said true owner thereof of the property, and with intent to convert the same to defendant's own use. *Held*, it is sufficient to prove the intent to deprive such true owner of his property, whether defendant intended to or did convert it to his own use, or the use of some one else, other than such true owner.

**Same—Special Prosecuting Attorney—Discretion of Court.**

11. It was, to say the least, discretionary with the trial court to allow, at the request of the attorney general, a private attorney, employed by such owner, to appear and prosecute the defendant; and it does not appear that the court abused its discretion.

Defendant was convicted in the district court for Chippewa county of embezzlement under the following indictment:

"John J. Rue is accused by the grand jury of the county of Chippewa, in the state of Minnesota, by this indictment of the

crime of grand larceny in the second degree committed as follows: The said John J. Rue did on the 16th day of January, A. D. 1896, at the town of Leenthrop, in said county of Chippewa and state of Minnesota, then and there being the agent, servant, bailee, and trustee of William Deering & Co., then and there being a corporation duly corporated and existing under and by virtue of the laws of the state of Illinois, and he, the said John J. Rue, then and there having in his possession, custody, and control as such agent, servant, bailee, and trustee of the said William Deering & Co., corporation as aforesaid, certain personal property, to-wit: Three certain promissory notes as follows: One note for one hundred dollars due and payable Oct. 1st, 1896; one note for one hundred dollars due and payable Oct. 1st, 1897; and one note for ninety-one and 40–100 due and payable Oct. 1st, 1898, each of said notes being dated on the 11th day of January, 1896, and each bearing interest at the rate of 10 per cent. per annum, interest payable semi-annually, and each duly executed by Thorvald H. Sloan; said promissory notes being ordinary negotiable instruments in writing for the payment of money and evidences of debt, and being then and there of the aggregate value of two hundred and ninety-one and 40–100 dollars, a more particular description of said notes being to this grand jury unknown; and also two certain mortgages securing the payment of said notes heretofore described, to-wit: A certain indenture of mortgage dated January 11th, 1896, made, executed and delivered by one Thorvald H. Sloan and Martha Sloan, his wife, conveying by deed of mortgage the following described land situated in Chippewa county and state of Minnesota, to-wit: The west half of the south-east quarter and the east half of the south-west quarter of section thirty-four, in township one hundred and seventeen, of range thirty-nine, containing one hundred and sixty acres according to the United States Government survey thereof, a more complete description of said mortgage being to the grand jury unknown; and also a certain chattel mortgage executed and delivered on said eleventh day of January, 1896, by the said Thorvald H. Sloan, wherein was conveyed by the said Sloan certain personal property, to-wit: One sorrel horse, ten years old; one chestnut horse, thirteen years old; one gray horse, four years old; one roan mare, four years old; one Van Pach lumber wagon complete; one two-seated spring wagon, used three years; one Deering harvester and twine binder; one Van Brunt & Wilkins drill; one Boss drag; one red cow, nine years old; one red cow, ten years old; one black muley; one red muley heifer, two years old; with increase from said stock; also all crops of every kind, nature and description, consisting of wheat, oats, barley, corn, and flax, which have been or may be hereafter sown, grown, planted, cultivated, and harvested during the year 1896, on the following described real estate situated in the county of

Chippewa, state of Minnesota, as follows, to-wit: The west half of the south-east quarter and the east half of the south-west quarter of section thirty-four, township one hundred and seventeen, of range thirty-nine, a more particular description of said chattel mortgage being to the grand jury unknown; each of said mort-gages, before referred to, being executed and delivered as security for the payment of the notes hereinbefore described according to the condition thereof; all of said personal property, notes, and mortgages aforesaid, being then and there of the value of two hundred and ninety-one and 40–100 dollars, and all and each of said notes and mortgages aforesaid were then and there the property of the said William Deering & Co., corporation as aforesaid, did then and there wilfully, unlawfully, knowingly, wrongfully, fraudulently, and feloniously appropriate the said property and all thereof to his own use, with intent then and there had and entertained by him, the said John J. Rue, to deprive the said William Deering & Co., corporation as aforesaid, the true owner of said property, of its said property and to convert the same to the use of him, the said John J. Rue, and did then and there convert the same to his own use, contrary to the statutes in such case made and provided and against the peace and dignity of the state of Minnesota."

From an order, Qvale, J., denying a motion for a new trial, defendant appealed. Affirmed.

*Lyndon A. Smith*, for appellant.

The verdict is not sustained by the evidence. Defendant's acts were within the authority given by his principal. The notes embezzled, if any, were the old notes and not the new ones. Com. v. Butterick, 100 Mass. 1; Bork v. People, 91 N. Y. 5. The identical money received must be that embezzled. Webb v. State, 8 Tex. App. 310. He had the right to renew as he did, or he did not. If he had that right, then his acts were justified. If not, then the title to the old notes remained in Deering & Co. If it remained in Deering & Co., then the old notes were converted in February. Nichols v. Minnesota, 70 Minn. 528. Defendant is not indicted for conversion of the old notes. The new notes belonged to Deering & Co. only on election. Fuller v. Langum, 37 Minn. 75. They had not elected to claim them. There is no evidence of intent to defraud. There is no evidence of intent to appropriate the notes to the use of defendant, or, in fact, to the use of any other person than the true owner. 1 Bishop, New Crim. Proc. §§ 485, 486. There is

no evidence of such relation between Deering & Co. and defendant as would sustain the conviction of defendant under the indictment for embezzlement by defendant from Deering & Co. The test of such relationship is whether there is a direct relation and compensation. 1 Wharton, Crim. Law (10th Ed.) § 1014; Reg. v. Thorpe; 8 Cox, Crim. Cas. 29. The essence of the crime of embezzlement consists in the relation of clerk or servant. Reg. v. Tyrie, 11 Cox, Crim. Cas. 241, 245. See Waterman v. State, 116 Ind. 51.

The indictment is defective. There is no sufficient description of the property embezzled in that there was no statement that the notes were made to any payee, or the mortgages to any grantee, and instruments without such parties are valueless. McIntosh v. Lytle, 26 Minn. 336; Allen v. Allen, 48 Minn. 462. The allegation that a further description of these instruments was to the grand jury unknown, is shown by an inspection of the indictment and the evidence in the case to have been untrue, and had it been true it would not have cured a failure to allege that the notes and mortgages were made to a payee whose name is to the grand jury unknown, so as to show that the instruments embezzled were instruments having some legal effect. 1 Bishop, New Crim. Proc. §§ 547–550, 552. There is no allegation from whom or in what way the property in question was received. 1 McLain, Crim. Law, § 638; 6 Am. & Eng. Enc. 497. There is no denial of consent of owner. 1 McLain, Crim. Law, supra. There is no distinct allegation of the particular relation of defendant to Deering & Co. 1 Bishop, New Crim. Proc. § 332. The indictment does not show with sufficient certainty that defendant, by virtue of his employment, was entrusted by Deering & Co. with the property upon which the charge of embezzlement against him is predicated. Smith v. State, 28 Ind. 321; State v. Wingo, 89 Ind. 204; State v. Brown, 12 Minn. 393 (490).

It was error to refuse to charge that each individual juror must be satisfied beyond a reasonable doubt of defendant's guilt. 2 Thompson, Trials, § 2494; Parker v. State, 136 Ind. 284; Grimes v. State, 105 Ala. 86; Carter v. State, 103 Ala. 93; State v. Witt, 34 Kan. 488; Castle v. State, 75 Ind. 146; 19 Am. & Eng. Enc. 1080. The main issues of a criminal trial should be proven beyond a rea-

sonable doubt, and an instruction to that effect given by the court unrequested. Davidson v. State, 135 Ind. 254; Black v. State, 1 Tex. App. 368; 2 Thompson, Trials, § 2490; U. S. v. Reder, 69 Fed. 965; Webb v. State, 8 Tex. App. 310. Where an indictment alleges appropriation to defendant's own use, it is a fatal variance to show that he appropriated it to the use of a third person. 1 Bishop, New Crim. Proc. § 485; 6 Am. & Eng. Enc. 843, and cases cited in note 3; Rapalje, Crim. Proc. § 107. Conversion to defendant's own use is a necessary ingredient of embezzlement. Webb v. State, supra. The court abused its discretion in allowing a private attorney to prosecute the case. His designation by the attorney general did not give him any rights,—they came, if at all, from the court. Counsel so appointed should not be under a private retainer. State v. Griffin, 87 Mo. 608.

*H. W. Childs*, Attorney General, *Frank M. Nye*, Acting Attorney General, *Oluf Gjerset*, County Attorney, and *C. A. Fosnes*, Acting County Attorney, for respondent.

CANTY, J.

The defendant was convicted of the charge of embezzling three promissory notes and a chattel mortgage, the property of William Deering & Co., a corporation, which notes and mortgage he had in his possession as "agent, servant, bailee and trustee" of said corporation. From an order denying a new trial, he appeals.

1. It is contended by appellant that the indictment is defective because it does not state to whom the notes or any of them were payable. The indictment states the date, amount, time of maturity, and maker of each note, but does not state the payee. It also avers that the notes are the property of said corporation. The indictment is sufficient. See 2 Bishop, New Crim. Proc. § 732, subds. 1, 2.

2. Under the language of section 415 of the Penal Code, it is not necessary to state in the indictment that the property was embezzled without the consent of the owner. No such provision enters into the definition of the offense. The other points urged against the indictment are wholly untenable.

3. It is contended that the verdict of guilty is not sustained by the evidence.

The defendant was in the employ of William Deering & Co., as its agent in collecting its notes and mortgages from the farmers in and around Chippewa county, in this state, from January to August, 1894. In August William Deering & Co. was succeeded in the business of manufacturing and selling machinery by the Deering Harvester Company. Thereafter the latter company acted as the agent of the former in collecting for it the notes and mortgages it had received on its former sales. Defendant continued in the employment until August 31, 1896. After August 25, 1894, he was paid by the Deering Harvester Company, but he collected the notes and securities of both companies. He also held a written power of attorney from William Deering & Co., dated January 2, 1895, which expired December 1, 1895, and another dated August 5, 1896, which expired December 31, 1896. Each of these powers of attorney was duly executed by William Deering & Co., and was held by him during the time it was in force, and authorized him to collect for William Deering & Co. the notes and securities.

On November 18, 1895, he had in his custody three notes made by T. H. Sloan, and indorsed by J. T. Sloan, for the aggregate sum of $242.60 and accrued interest, payable to William Deering & Co., and its property. On that day he wrote the Deering Harvester Company (which was also the agent of William Deering & Co.) that the notes were worthless, that he had a "chance to close this claim out for $100 in cash," and advised that the offer be accepted. He received an answer stating,

"One hundred dollars seems a small amount to be accepted in settlement of these notes; yet if, in your opinion, such deal is advisable, you make it. We leave the matter entirely to your own good judgment."

On January 11, 1896, he took T. H. Sloan to the office of one Rollefson, at Montevideo, and there surrendered the notes and mortgage to Sloan, received from him three new notes, signed by him, for the same aggregate amount and accrued interest, amounting in all to $291.40. The new securities were drawn up by Rollef-

son. The new notes were signed by Sloan's wife, and they were all secured by a second mortgage on certain real estate, a chattel mortgage on the crops thereafter to be grown on this real estate, and on some horses, cows, a wagon, and some farm machinery. These mortgages were executed by Sloan, and they and the new notes were made payable to one John L. Johnson. Five days later, January 16, defendant wrote the Deering Harvester Company, inclosing a draft "for $100, in settlement in full" of the three notes which were described, the amounts of which were placed in a column, and added together, so as to give the total. The letter contained the following:

"Total, $242.60; compromise, $142.60; balance, $100.00. The maker of this claim, as I made report on November 18th, '95, offering $100 for the claim, which I accepted in full settlement, security on the four cows, and the heifer and one H. and B. is only 2nd mortgage; the first mortgage being $400.00; so there is no equity in the chattel security."

The letter then states that T. H. Sloan was drunk most of the time, so that it was difficult to do business with him. It proceeds:

"But to-day I went out after him, and brought him right into town with me, and got the matter closed up, as I figured that whatever there was got out of this claim was clear gain, as very likely the way this party is coming on it would be the best chance to get a dollar out of the claim."

It is further stated that T. H. Sloan and J. T. Sloan are both worthless and insolvent.

Up to the time that the new notes were taken in Johnson's name, he had been the cashier of a bank at Renville, but about this time his connection with the bank ceased. Defendant and Johnson both testified that they had entered into an agreement by the terms of which Johnson was to purchase the old notes for $100, and defendant was to get them "fixed up" or renewed; and defendant testified that he took the new notes and securities in Johnson's name, pursuant to the agreement. Johnson testified that about this time he ceased to be cashier of the bank, and for that reason could not carry out the agreement, and take the new notes and securities, and pay the $100 for them. He indorsed the notes with-

out recourse, and assigned the securities in blank, and delivered them back to defendant, who thereafter took them to Rollefson, at Montevideo, received from him $100, delivered the notes and securities to him, and purchased with the $100 the draft sent in the letter aforesaid. Defendant testified that he sold the notes and securities to Rollefson. The latter died soon after, and was not a witness in this case. Johnson further testified that, though he offered $100 for the notes, he did not know Sloan, or know where he lived, or anything about him. He also testified that in September, 1896, just after defendant was arrested on this charge, he came to the witness, showed him the new notes, and requested him to represent that he had bought the notes and mortgages, and paid for them, and had subsequently sold them to Rollefson. Defendant admitted on the witness stand that he made this request, and that he then had the notes in his possession, although he had long before sold them to Rollefson.

It is contended by appellant that the evidence will not support the charge that he acted fraudulently or dishonestly in the matter, or that he ever derived any benefit from the transaction. We are of the opinion that, on the evidence, these questions were for the jury. We cannot recite the many circumstances which show this, and the many explanations made by defendant. The evidence warranted the jury in finding that the new notes were amply secured, and worth their face, and that defendant knew this when he wrote the letter of January 16. It is also apparent from this letter that he suppressed the truth, and stated what was not true in several respects. The evidence warranted the jury in finding that defendant intended to, and did, embezzle and appropriate to his own use what did not belong to him, and that he used the means above stated to facilitate and conceal such embezzlement.

4. We are also of the opinion that the evidence warranted the jury in finding that, at the time in question, defendant was the agent of William Deering & Co., as well as of the Deering Harvester Company; so that it will not be necessary to consider whether the defendant could be convicted on this indictment if he was only the agent of the latter while it was the agent of the former.

5. Whether or not the evidence showed that William Deering & Co. was a corporation de jure, the articles of incorporation and the oral evidence showed, at least, that it was a corporation de facto, and that is sufficient.

6. Appellant further contends that, if the evidence shows that he embezzled anything, it is the old notes, not the new ones, and that, in the absence of proof of a ratification of the transaction by William Deering & Co., an election to take the new notes and securities, a conviction cannot be sustained under the indictment.

We cannot agree with appellant. The new notes were never the property of Johnson, the payee therein named. They never were the property of defendant. The evidence would, as appellant concedes, warrant the jury in finding that he had general authority from William Deering & Co. to take these new notes in the form he has taken them. If Sloan gave them in good faith, William Deering & Co. could not, as between it and Sloan, repudiate the transaction. It follows that the new notes were the property of William Deering & Co., whether it elected to accept them or not; and, if defendant subsequently embezzled them, he is guilty as charged. This is all that it is necessary to say on this point.

7. Exhibit C, the written contract made by defendant and William Deering & Co. when he first entered into its employment in January, 1894, was offered in evidence by the state. Defendant objected to it, but not on the ground that the signatures of the parties were not proved, and the objection was overruled. The state subsequently called a witness who proved the signature of defendant. The instrument was also signed, "William Deering & Co., per Lewis Spooner." The witness stated that he was familiar with the signature of Spooner, and that this was his signature. He stated on cross-examination that he had never seen Spooner write, but knew the signature from having seen it on a great amount of correspondence which he had with the company, in which Spooner had acted for it. A motion then made to strike out the testimony as to the signature on the instrument was denied. If this was error, it was error without prejudice, because the contract had already been received in evidence, and defendant had waived proof of the signature by failing to object on that ground.

72 M.—20

8. The sheriff was called as a witness, and asked the value of certain property covered by this chattel mortgage, which property he had taken in replevin. The objection that the question is incompetent, irrelevant and immaterial did not cover the objection now made, that he had not shown himself competent to testify as to the value.

9. It is assigned as error that the court refused to give the third request to charge, which reads as follows:

"It is the duty of the jurors to carefully examine all of the evidence, and consider the same in the light of and in connection with the court's instructions, and honestly endeavor to reach and return a verdict either against or in favor of the defendant; but if a juror, or any juror, after he has duly weighed and considered all of the evidence and the court's instructions, is not then satisfied beyond all reasonable doubt that the defendant is not guilty, it will be the duty of such juror or jurors to vote for the defendant's acquittal, and to refuse to agree to a verdict of guilty. This will be so notwithstanding all other jurors may be satisfied, and express themselves as satisfied, beyond a reasonable doubt of the defendant's guilt; for no single juror who has duly weighed and considered all the evidence in the case, and also the court's instructions, and thereafter and thereupon honestly concluded that the defendant is not guilty or that he is not satisfied beyond all reasonable doubt of the guilt of the defendant, is required to or expected to surrender or abdicate his individual, honest judgment, in order that a majority, or even a large majority, of all the jurors may thereby be enabled with his acquiescence to return a verdict of guilty."

In our opinion, this request is an invitation to disagree, if possible, and was properly refused. The court charged the jury a great many times that they must find defendant guilty beyond a reasonable doubt, and beyond all reasonable doubt, before they could return a verdict of guilty; and the charge was sufficiently favorable to him in this respect.

10. It is assigned as error that the court refused to charge that a verdict of guilty cannot be found for a conversion of the notes by defendant to the use or benefit of any other person than himself. The indictment charges that defendant appropriated the property to his own use with intent to deprive William Deering & Co., the true owner of the property, of its said property, and to convert the same to his own use. Section 415 of the Penal Code provides:

"A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either [then follows subdivision 1, which deals with larceny and false pretenses, and subdivision 2, which deals with embezzlement] steals such property, and is guilty of larceny."

It will be observed that all of the clauses in the above-quoted first part of the section are in the disjunctive. Construed as it reads, it provides that a person is guilty who took "with intent to deprive or defraud the true owner of his property," whether such person intended to appropriate it to his own use or not, or to the use of any other person or not. Such person is guilty if he intended to deprive the true owner of his property, no matter to whose use he appropriated it, so long as he did not appropriate it to the use of such owner. The common-law crime of larceny has not been changed by this section, but still remains the same. State v. Friend, 47 Minn. 449, 50 N. W. 692. Lucri causa, or the intent to appropriate the property to the use of the thief or some one else, is not a necessary ingredient in that crime. 2 Bishop, New Crim. Law, §§ 846–848; Williams v. State, 52 Ala. 411; People v. Juarez, 28 Cal. 380; State v. Davis, 38 N. J. L., 176; Delk v. State, 64 Miss. 77, 1 South. 9; Phelps' Case, 49 How. Prac. 437; dissenting opinion of Learned, P. J., in People v. Woodward, 31 Hun, 57. But, if this is true as to the crime of common-law larceny, it is equally true as to embezzlement, because this part of section 415 applies to both crimes,—defines them both as far as it goes. Then, if it is not necessary in larceny to prove the intent of the accused to convert the property to his own use, it is not necessary in embezzlement. It is sufficient in any case to prove the embezzlement by the accused, with intent to deprive the true owner of his property.

11. It is assigned as error that a private attorney, who was employed by William Deering & Co., was allowed, on the request of the attorney general, to appear and prosecute the defendant. To allow such counsel to appear was, to say the least, discretionary with the trial court. See State v. Ward, 61 Vt. 153, 17 Atl. 483. And it does not appear that the court abused its discretion.

We have examined all the other numerous assignments of error,

and find no error in any of the rulings assailed by them, and find none of them having sufficient merit to warrant any further discussion.

Order affirmed.