CARRIE ROBINSON, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed April 27, 1915.

1.  Where the language of an indictment for murder in the first degree is clear enough to enable the jury to easily understand it, and is not so vague as to mislead the accused and embarrass her in the preparation of her defense or expose her to substantial danger of another prosecution for the same

offense, the indictment, if not otherwise defective, should not be quashed.

2. An indictment for murder in the first degree is not defective for failure to allege that the defendant administered to the deceased "a mortal wound" or "mortal injury" or "mortal sickness" where the language of the indictment sets up a plain, direct and certain state of facts constituting the crime from which the connection between the facts alleged as the cause of death and the death itself appears.

3. Where the language of an indictment is sufficiently certain to enable an innocent person to prepare for trial and furnishes the accused with reasonable information of what he is called upon to answer by setting forth the constituent elements of the crime charged, it cannot be maintained that the accused is not apprised of the nature and cause of the accusation against him.

4. A member of the bar privately employed by citizens interested in the suppression of crime, may with the consent of the State Attorney and the court be permitted to participate in the prosecution of a criminal cause in the Circuit Courts of this State, as assistant to the State Attorney.

5. Premeditation is an essential element of the crime of murder. Its existence may be inferred from the circumstances of the case. Where a woman is charged with the murder of her infant child, and the evidence tends to show that it was destroyed immediately upon its birth, evidence of the woman's intention or desire before the birth of the child to produce an abortion is admissible as tending to show the existence of a motive for the destruction of the infant and of a premeditated design to destroy it.

6. A verdict will not be set aside as against the evidence where there is evidence to support it, and where it does not appear that the jury were not governed by the evidence.

7. Where an instruction is considered in connection with other

instructions upon the same subject, or the entire charge, and is found to be free from the defects complained of in the assignment of error, the assignment will fail.

Writ of error to Circuit Court for Columbia County; M. F. Horne, Judge.

Judgment affirmed.

*J. B. Hodges,* for Plaintiff in Error.

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

ELLIS, J.—Carrie Robinson, a white woman, was indicted for the murder of her infant child, and was found guilty of murder in the first degree and recommended to mercy. She was sentenced to imprisonment in the State prison at hard labor for the period of her natural life.

A motion was made to quash the indictment, which motion was overruled, and such order is assigned as error. The motion contains ten grounds, but only the fifth and ninth grounds are argued, the others being expressly abandoned. The fifth ground of the motion is as follows: "5. Because said indictment fails to allege the manner of the death of the deceased"; and the ninth ground is as follows: "9. Because said indictment fails to show that deceased received a mortal wound or injury at the hands of defendant whereby death was caused."

The indictment, omitting the venue, is as follows: "In the name of the State of Florida. The Grand Jurors of the State of Florida, duly chosen, empannelled and sworn diligently to inquire and true presentment make in and

for the body of the County of Columbia, upon their oath present that Carrie Robinson late of said County, on the 13th day of April, A. D. 1914, in the County and State aforesaid, with force and arms, in and upon a certain child then recently born of the said Carrie Robinson and not named of and from a premeditated design to effect the death of said child did unlawfully make an assault; and the said Carrie Robinson of and from a premeditated design to effect the death of the said child with the hands of her, the said Carrie Robinson, placed and tightly pressed around and upon the neck of the said child, she, the said Carrie Robinson did then and there unlawfully of and from a premeditated design to effect the death of the said child give to the said child upon and around the neck of the said child a mortal pressure, choking and strangling the said child of and from which said mortal pressure, choking and strangling the said child did then and there die; contrary to the laws of the State of Florida.

Stafford Caldwell, State Attorney."

It is contended for plaintiff in error that inasmuch as the indictment does not allege that the defendant administered to the child a "mortal wound" or a "mortal injury" or a "mortal sickness" it is fatally defective and because the indictment does not allege that the "pressure was administered with the hands of defendant," nor how it was done, the indictment is invalid. The latter point is not argued. The brief for the plaintiff in error containing merely a suggestion that the pressure was not alleged to have been made with the hands of the defendant. The manner and means of the killing is sufficiently alleged under the provisions of Sections 3961 and 3962 of the General Statutes. The nature of the offense charged is

described in such language as was sufficiently clear to enable the jury easily to understand it, and it was not so vague, indistinct and indefinite as to mislead the accused and embarrass her in the preparation of her defense, or expose her to substantial danger of a new prosecution for the same offense. Indictments and informations should be upheld whenever there has been a substantial compliance with the law as announced in those sections of the General Statutes of Florida. Barber v. State, 52 Fla. 5, 42 South. Rep. 86; Lewis v. State, 55 Fla. 54, 45 South. Rep. 998; Tillman v. State, 58 Fla. 113, 50 South. Rep. 675. The assault is alleged to have been made by the defendant unlawfully and from a premeditated design to effect the death of her child; the manner of the assault is shown to have been with the hands of the defendant "placed and tightly pressed around and upon the neck of the said child." The indictment then alleges that the defendant did "then and there unlawfully of and from a premeditated design to effect the death of the said child give to the said child upon and around the neck of the said child a mortal pressure", etc. The manner and means of the assault, and the intention with which it was made are clearly shown. The language of the indictment might have been made clearer as counsel for the plaintiff in error insists, by the insertion of the words suggested in his brief; but the statute does not require the highest standard of excellence in the phraseology of indictments. If the language is clear enough to enable the jury to easily understand it and not so vague as to mislead the accused and embarrass her in the preparation of her defense or expose her to substantial danger of another prosecution for the same offense, it is sufficient. Dickens v. State, 50 Fla. 17, 38 South. Rep. 909.

The contention of the plaintiff in error that the indict-

ment is fatally defective because it does not allege that the defendant administered to the child a "mortal wound" or a "mortal injury" or a "mortal sickness" is not well founded. In the case of Brown v. State, 18 Fla. 472, Judge RANDALL, then Chief Justice of this court, announced as his view of the question that "In addition to requiring the statement of the cause and the manner of the death, the further statement that the wound was 'mortal' has no authority in the logic of the law. The practice has conformed to the forms prescribed by an ancient court and been perpetuated by the compilers of form books and precedents; and in my judgment the use of the words 'mortal wounds' in an indictment for murder by felonious wounding are unnecessary and superfluous, where the indictment alleges a wounding which produces death and precludes the suggestion that the death was caused by any other means." In the Keech Case, 15 Fla. 591, it was held that where the wound inflicted was an incised wound its dimensions should be given and that the part of the body in which the deceased was wounded should be particularly stated. But the views as announced in the Keech Case on this subject have been abandoned. See Hodge v. State, 26 Fla. 11, 7 South. Rep. 593; Walker v. State, 34 Fla. 167, 16 South. Rep. 80; Roberson v. State, 42 Fla. 223, 28 South. Rep. 424. The views expressed by Judge RANDALL have not been repudiated by this court. The case cited by counsel for plaintiff in error do not sustain his position that the indictment should allege that the wound inflicted was mortal. Although in the cases cited the indictment alleged the wounds to have been mortal, in neither case was the point raised, and the indictments were held to be valid or invalid for other and different reasons. In the case at bar there was no incised wound. Death was alleged to have been produced by a "pressure

upon and around the neck." The pressure was alleged to be "a mortal pressure" choking and strangling the child, "of and from which said mortal pressure choking and strangling the said child did then and there die." What better allegation could be made than the choking and strangling were mortal? What more is necessary to apprise the defendant of the nature and cause of the accusation against her than a plain, direct and certain statement of the facts constituting the crime from which the connection between the facts alleged as the cause of death and the death itself appears? See 21 Cyc. 847. The indictment shows the adequacy of the means employed to produce death, because it is distinctly averred that the child died of the choking and strangling, produced by the pressure of the defendant's hands on the neck of the deceased, which pressure is alleged to have been mortal. 1 Stark Crim. Pleading 93; Lane v. State, 151 Ind. 511, 51 N. E. Rep. 1056; State v. Noblett, 47 N. C. 418.

The second assignment of error is as follows: "That the court erred in overruling and denying the defendant's demand for the nature and cause of the accusation attempted to be made against her." The motion to quash the indictment contained a ground based upon the same right of the defendant; that she should be informed of the nature of the "charge and accusation against her," or as the constitution provides: "to demand the nature and cause of the accusation against" her. When the motion to quash the indictment was overruled the defendant below, by her attorney, presented her demand as stated, which was "overruled and denied." This provision in the constitution was based upon the presumption of innocence, and requires such certainty in indictments and informations as will enable an *innocent* person to pre-

pare for trial, that will furnish the accused with reasonable information of what he is called upon to answer by setting forth the constituent elements of the offence or crime with which he is charged. This provision requires that the accusation shall set forth with reasonable certainty a charge of the crime for which the prisoner is to be tried. The object of the provision being to protect the innocent, not to shield the guilty. The indictment being duly presented in court, upon being arraigned the prisoner has the right to have it read to him; thus he is advised of, and has the nature and cause of the accusation against him. See Noles v. State, 24 Ala. 672; Conner v. Commonwealth, 13 Bush (Ky.) 714; State v. Verrill, 54 Me. 408; State v. Learned, 47 Me. 426; Newcomb v. State, 37 Miss. 383; Norris v. State, 33 Miss, 373; Commonwealth v. Phillips, 16 Pick. (Mass.) 211; Commonwealth v. Robertson, 162 Mass. 90, 38 N. E. Rep. 25; State v. Doran, 99 Me. 329, 59 Atl. Rep. 440; Moline v. State, 67 Neb. 164, 93 N. W. Rep. 228. The indictment was sufficient in its allegations to apprise the defendant of the nature and cause of the accusation against her. She moved the court by her counsel to quash the indictment, and she was then arraigned and pleaded not guilty. It appears that in this particular her constitutional rights were fully secured to her.

The record disclose the following situation: After the defendant had been arraigned and pleaded not guilty to the indictment and the jury sworn to try the issue joined, it appeared that the State Attorney "was being assisted in the trial of said cause by Mr. F. P. Cone, an attorney at law," the defendant, by her counsel, moved the court "that the statute relating to the employment of private counsel be complied with; that the State Attorney make

an application to the court, showing the necessity of the
employment of private counsel by him, and if the counsel
is employed by private parties, that the interest of those
parties who employed private counsel be disclosed to the
court and to the defendant, in order that it may be shown
whether or not those parties have such an interest as
entitles them to prosecute crime in this court." In this
motion the defendant asserted that it was her right in
the trial of this cause, that the State should be represented
only by the public prosecutor, the State Attorney, unless
it was made to appear that the State's business rendered
it necessary for the State Attorney to procure the assist-
ance of a member of the bar to be compensated by the
State Attorney or by private parties having "such an
interest as entitles them to prosecute crime in this court."
The record discloses that the State Attorney made the
following statement to the court : "State Attorney. In
my place as counsel I will state that Mr. Cone is not
employed by any private interest; he is employed by par-
ties who are interested in this case, but he is not employed
by any one who is interested by personal motives any
more than they are interested in the efforts of the State
Attorney. The case however. is under my direction and
control as State Attorney. I propose to be present and
prosecute the case with Mr. Cone's help, and I have no
objection to his being sworn. I will ask the court to swear
Mr. Cone as Assistant State Attorney during the trial."
The court denied the defendant's motion and decided that
"Mr. Cone might be sworn as an assistant to the State
Attorney for the prosecution of this case." To this ruling
of the court the defendant by her counsel excepted and the
ruling forms the basis of the third assignment of error.
The defendant by her counsel then interposed the following
objection: "We object to Mr. Cone being sworn as assist-

34—Vol. 69.

ant State Attorney, because it is not represented by the State Attorney that the amount of the State's business at this term of court warrants the securing by him of private counsel to assist him in the prosecution of this case; and further it is not shown that if employed by private parties, what those parties interest in this case may be.'' The State Attorney then replied as follows: "The State Attorney represents to the court as an officer of this court and as State Attorney that Mr. Cone is not employed by any private party interested in this case from any personal motive; that Mr. Cone is employed by a proportion of the citizens of Columbia County acting as a citizenship interested in the suppression of crime and not from any party or parties interested in the prosecution of the defend· ant from motives of revenge, hatred or any other personal motive directly connected with the death of the person alleged to have been killed. The State further represents to the court that by reason of the volume of business transacted and to be transacted at this term of court, by reason of the congested condition of the docket, by reason of the number of cause to be tried and to have been tried, the time that the present State Attorney was required with the Grand Jury a number of cases at this term, for which indictments were returned at the last term of the court while the State Attorney of another Circuit was representing the State in this county, with which cases the regular State Attorney only had an opportunity to become familiar at this term of court, that it is advisable that the State Attorney have an assistant in this case, and for that reason he requests that Mr. F. P. Cone be sworn as Assistant State Attorney."

The defendant's objection was overruled by the court, to which ruling the defendant excepted by her counsel,

and makes it the basis of the fourth assignment of error. Mr. Cone "was then sworn by the court as an Assistant State Attorney in the prosecution of this case." The defendant interposed the following objection: "Defendant objects to the participation of Mr. Cone as Assistant State's Attorney in this case, because the statement of the State Attorney shows that Mr. Cone has not been paid by himself, the State Attorney, as required by law, but that he has been paid by private citizens of this county and their interest has not been shown in the record here." This objection was overruled, and forms the basis of the fifth assignment of error.

By these objections the defendant by her counsel presented fully the question, whether in this jurisdiction a member of the bar, privately employed, by "citizens interested in the suppression of crime," may with the consent of the State Attorney and the court be permitted to participate in the prosecution of a criminal cause, as Assistant to the State Attorney.

This question is not answered by Section 1791 General Statutes of Florida, 1906, which is as follows: "The State Attorney, by and with the consent of court, may procure the assistance of any member of the bar when the amount of the State business renders it necessary, either in the grand jury room to advise them upon legal points and framing indictments, or in court to prosecute criminals. But such assistant shall not be authorized to sign any indictments or administer any oaths, or to perform any other duty except the giving of legal advice, drawing up of indictments, and the prosecuting of criminals in open court. His compensation shall be paid by the State Attorney and not by the State."

In that statute the Legislature has recognized the policy of the employment by the State Attorney by and with the consent of the court, of assistance when the amount of the State's business renders it necessary. In such case the duties of the Assistant are defined by the Statute. Miller v. State, 42 Fla. 266, 28 South. Rep. 208. The Statutes of this State make it the duty of the State Attorneys to appear in the Circuit Courts within their judicial circuits and prosecute or defend on behalf of the State all suits, applications or motions, civil or criminal, in which the State is a party, to attend the grand jury for the purpose of examining witnesses in their presence, or giving legal advice in any matter before them, to summon all witnesses required on behalf of the State, etc. Gen. Stats. of 1906, sections 1779-1781. And to assist the Attorney General in the preparation and presentation of all appeals to the Supreme Court from the Circuit Court of their respective Circuits of all cases civil or criminal in which the State is a party. They may also be required by the Governor to exchange Circuits when he thinks that the ends of justice require it, or the State Attorney may be assigned to discharge the duties of State Attorney in any Circuit of the State at any regular or special term of the Circuit Court. They are also required to represent the State in all cases of habeas corpus arising in their respective Circuits, and to represent the State either in person or by assistant, in cases of preliminary trials of persons charged with capital offenses, in all cases where the Committing Magistrates give them timely notice as required by the statute, except in such counties where Criminal Courts of Record or County Courts may be established. Chap. 5399 Laws of Fla. 1905.

Our view is that these statutes, Chapter 5399 Act of

1905, and Sections 1779-1781 Gen. Stats. of 1906, do not give to the State Attorney the exclusive duty to conduct and manage criminal prosecutions, nor as declarative of a public policy against the employment by private persons, of an attorney to conduct or assist in the prosecution of criminal cases, as has been held by the Supreme Courts of Massachusetts, Michigan and Wisconsin.

In the Thalheim Case, 38 Fla. 169, 20 South. Rep. 938, the court said that it found the overwhelming weight of authority in favor of the practice of allowing attorneys employed or paid by private parties to assist the State Attorney in the prosecution of persons charged with crime. It is proper, said the court, "For the State Attorney when there is no express statutory prohibition, to obtain, with the consent of the court, the assistance of other counsel, and other members of the bar are not incompetent to be engaged for such assistance and taking part in the trial by reason of being retained and compensated by the prosecuting witness, the party injured by the crime, or *other private interests.*" The only point of difference between the case at bar and the Thalheim Case is, that in the latter case the private counsel were employed by the people whose property was alleged to have been embezzled, who had a close, direct or concrete interest it may be said in the prosecution, while in the case at bar the private counsel was employed by people whose interest in the prosecution was abstract, it was the interest of citizens in the suppression of crime. In this they were further removed from the personal hatred and desire for revenge than might be those whose property was taken or relatives slain or outraged. But the Thalheim case seems not to have been decided upon the theory that persons whose property has been taken or relatives slain or outraged,

have peculiar right to employ private counsel to assist the State Attorney in the prosecution of the wrong done. The court quoted at length from Supreme Court of North Dakota in the case of State v. Kent, 4 N. Dak. 577, 62 N. W. Rep. 631, 27 L. R. A. 686, in which State at the time of the trial of the cause, the statute made it the duty of the State Attorney for the county to "prosecute all criminal offenses triable in that county." The court said: "We are unable to discover in the statute any other policy than that of transferring the *control* of criminal prosecutions from private to public hands."

It has been the practice in this State for many years for counsel employed by persons desirous of a conviction in a criminal cause to assist the prosecuting attorney in the conduct of the prosecution. Public justice sometimes requires it. A community does not surrender its interests in the prosecution of criminals simply because a prosecuting officer is charged with the duty of conducting the prosecution of all criminal cases. When assistance is offered to the State Attorney, it may not be rendered without his consent and that of the court whose duty it is at all times to see that the defendant obtains a fair and impartial trial. The State Attorney is required to be present at the trial, remaining at all stages of the case in control of the prosecution. It is his duty as well as that of the court to see that the prosecution "does not degenerate into a private persecution, and that the administration of the criminal law is not made a vehicle of oppression for the gratification of private malice, or the accomplishment of private gain or advantage." As was said in the case of State v. O'Brien, 35 Mont. 482, 90 Pac. Rep. 514: "The defendant is entitled to a fair and impartial trial, but nothing more. Special counsel are subject to the same control by

the court as the public prosecutor, and so long as they are not guilty of conduct prejudicial to the defendant the latter has no right to complain."

At Common Law criminal prosecutions were generally carried on by individuals interested in the punishment of the accused and not by the public. But our system does not exclude counsel for interested persons, whether their interest be concrete or abstract, from all participation in the prosecution. We do not apprehend the danger which counsel fears from such practice. Private counsel cannot initiate the proceedings or conduct them. The Legislature has taken the control of criminal prosecutions in the Circuit, County and Criminal Courts of Record out of private hands and placed it in the hands of public officials chosen for that purpose, but there is nothing in the statute to warrant the conclusion that counsel employed by interested persons may not assist the public prosecutor in the prosecution of a criminal case with the latter's consent and that of the court. See State v. Kent, 4 N. Dak. 577, 62 N. W. Rep. 631, 27 L. R. A. 686; Keyes v. State, 122 Ind. 527, 23 N. E. Rep. 1097; State v. Wilson, 24 Kan. 189, 36 Am. Rep. 257; State v. Fitzgerald, 49 Iowa 260, 31 Am. Rep. 148; State v. Helm, 92 Iowa 540, 61 N. W. Rep. 246; People v. Powell, 87 Cal. 348, 25 Pac. Rep. 481, 11 L. R. A. 75; State v. Wells, 54 Kan. 161, 37 Pac. Rep. 1005; State v. Bartlett, 55 Me. 200; State v. Bartlett, 105 Me. 212, 74 Atl. Rep. 18, 24 L. R. A. (N. S.) 564; Hayner v. People, 213 Ill. 142, 72 N. E. Rep. 792; Schular v. State, 105 Ind. 289, 4 N. E. Rep. 870; Jackson v. Commonwealth, 96 Va. 107, 30 S. E. Rep. 452; Commonwealth v. Eisenhower, 181 Pa. St. 470, 37 Atl. Rep. 521; State v. Rue, 72 Minn. 296, 75 N. W. Rep. 235. The Nebraska Supreme Court held the same way. Polin v. State, 14 Neb. 540;

Bradshow v. State, 17 Neb. 147, and other cases. But by a divided court in the case of McKay v. State, decided in 1911 under a recent statute prescribing the duties of County Attorneys, receded from its former holding. See also State v. Orrick, 106 Mo. 111, 17 S. W. Rep. 176. There is nothing in the record to show that Mr. Cone conducted himself in any manner unbecoming an officer of the court, nor that the defendant suffered any injustice from his connection with the case. We think the assignments numbered 3, 4 and 5 are not sustained.

The sixth and seventh assignments of error rest upon the action of the court in overruling defendant's objection to certain questions propounded to witnesses. The questions were in substance the same to each witness, and their answers similar. The assignments are discussed together and will be considered together. The question first complained of was as follows: By the State's Counsel to Thomas George, a witness for the State. "I will ask you if within a short length of time prior to last April, that is April, 1914, you heard any conversation by and between the defendant and any other person with reference to the doing away of an unborn infant?" The objection made was, "That the question is leading; that it is not shown what length of time before the alleged date of the homicide; and upon the further ground that it seeks testimony relative to the crime of abortion, and not the crime of murder." The questions to Elsie McNish were as follows: "Q. Have you ever had any talk before April this last gone April, with the defendant, Mrs. Robinson, about doing away with an unborn child? A. Yes, sir. Counsel for defendant. We object to the question, because it is not shown how long before the commission of the crime laid in the indictment; because it is leading, and because

it tends to show that the evidence sought out of this witness is relative to the crime of abortion, which is an indictable offense under our law, and the person mentioned was not in being at the time that the witness is testifying about. By the Court: The question is too broad. State Attorney: It is a preliminary question only. Q. State whether or not during the latter part of last year, 1913, or the early part of this year, 1914, you had any talk with the defendant, Mrs. Robinson, about getting rid of an unborn child? Counsel for defendant: We object to the question because it is leading; we object upon the ground that the party defendant is charged with murdering was not in being at that time, and it is relative to the crime of abortion and not murder. The court overruled the objection, to which ruling the defendant, by her counsel, duly excepts." These questions as the replies to them show, were intended to elicit information as to the fact of the pregnancy of the defendant at the time inquired about, and the defendant's desire to conceal the birth of the child. Premeditation is an essential element of the crime of murder, and may be inferred from the circumstances of the case. Hicks v. State, 25 Fla. 535, 6 South. Rep. 441; Lovett v. State, 30 Fla. 142, 11 South. Rep. 550; Keigans v. State, 52 Fla. 57, 41 South. Rep. 886; Barnhill v. State, 56 Fla. 16, 48 South. Rep. 251. It was proper for the State to show by evidence that prior to the birth of the child the defendant mediated its destruction. Though if the foetus had been destroyed pursuant to her design to produce an abortion, it would not have been murder, yet the state of her mind concerning the unborn child would tend to throw light upon the question whether after the act of parturition it had been destroyed by her and the reason which operated in her mind for its destruction. See Wallace v. State, 7 Tex. App. 570, and Harris v.

State, 28 Tex. App. 308, 12 S. W. Rep. 1102, 19 Am. St. Rep. 837.

A motion for a new trial was made and overruled, and forms the basis of the eighth assignment of error. The first two grounds of the motion attack the sufficiency of the evidence to support the verdict.

The evidence is conflicting. The State's case rested upon the testimony of the witness Bertha Scott, with such corroborating circumstances as were testified to by the husband of this negress, Dave Scott, and other witnesses who testified as to the pregnancy of the defendant. Assuming that the facts sworn to by these witnesses were true, there is sufficient evidence to support the verdict, and it was the jury's province to determine the credibility of the witnesses and the weight of the evidence.

This court has held in a long line of decisions that where there is any evidence to support the verdict, it will not be set aside as against the evidence, where it does not appear that the jury were not governed by it. Adams v. State, 56 Fla. 1, 48 South. Rep. 219; Barnhill v. State, 56 Fla. 16, 48 South. Rep. 251; Kent v. State, 53 Fla. 51, 43 South. Rep. 773; Lindsey v. State, 53 Fla. 56, 43 South. Rep. 87; Williams v. State, 45 Fla. 128, 34 South. Rep. 279; Logan v. State, 58 Fla. 72, 50 South. Rep. 536.

The fifth, sixth and seventh grounds of the motion attack certain charges of the court numbered three, five and twelve. The assignment of error, however, so far as it involves the last numbered charge, is abandoned.

The third and fifth instructions were as follows:

"3.   The unlawful killing of a human being when perpetrated from and with a premeditated design to effect the death of the person killed is murder in the first degree,

upon the birth of a living child, that is one that breathes and lives after its birth, it becomes and is a human being within the meaning of the law of murder and its as much a crime to kill a person that has just begun to live as to kill one that has lived for many years."

"5.    If you believe from the evidence in this case beyond a reasonable doubt that the defendant was with child and that on April 13th, 1914, or at any other time prior to the finding of the indictment she was delivered of, and gave birth to a child and that such child was born and that it lived for some period of time, no matter how short, and that the defendant in this County and State by and with her hands by a choking, strangling and pressure killed the child from and with a premeditated design to effect the death of said child, and that from and as a result of such choking, strangling and pressure the child died and not otherwise, then you should find the defendant guilty of murder in the first degree."

We find no error in either instruction, and when read together they are completely relieved from the criticism made by the counsel for plaintiff in error upon each. No undue importance was given in these instructions to any particular feature of the alleged crime, nor was the testimony of any particular witness singled out and given undue prominence. The entire charge bearing upon the subject should be considered in determining whether there is error. Hallbeck v. State, 57 Fla. 15, 49 South. Rep. 153; Lewis v. State, 55 Fla. 54, 45 South. Rep. 998; Davis v. State, 54 Fla. 34, 44 South. Rep. 757.

The judgment of the court below is affirmed.

TAYLOR, C. J., AND SHACKLEFORD, COCKRELL AND WHIT-FIELD, JJ., concur.

## ON PETITION FOR REHEARING.

ELLIS, J.—The plaintiff in error filed a petition for rehearing on the ground that the court "omitted to consider the fact that said indictment fails to allege that a mortal wound, or any wound whatever, was administered to the deceased by the defendant," and that the allegations of the indictment do not "preclude the suggestion that the death was caused by any other means" than by a "mortal pressure, choking and strangling."

The indictment does not allege that a wound was inflicted upon the child who was killed, but alleges that the defendant gave "to the said child upon and around the neck of said child a mortal pressure, choking and strangling the said child of and from which said mortal pressure, choking and strangling the said child did then and there die," etc. The court said in its opinion that the indictment showed the adequacy of the means employed to produce death. That the indictment contained a plain, direct and certain statement of the facts constituting the crime from which the "connection between the facts alleged as the cause of death and the death itself appears." If it appears from the allegations of the indictment that the facts therein alleged produced the death, the suggestion that death might have been caused by other means is necessarily precluded.

The court did not omit the consideration of the questions referred to in the petition as the opinion shows. The petition is therefore denied.

All concur.